**BETHEL BAPTIST CHURCH, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 84–1586.**

United States District Court, M.D. Pennsylvania.

March 6, 1986.

As Amended March 7, 1986.

William Bentley Ball, Ball & Skelly, Harrisburg, Pa., for plaintiffs.

Holly K. Harris, Asst. U.S. Atty., Scranton, Pa., Robert L. Gordon, Atty. Tax Div. Dept. of Justice, Washington, D.C., for defendant.

### MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Plaintiffs, Bethel Baptist Church (Bethel), its pastor, employees and certain church members have challenged the constitutionality of the social security amendments of 1983 and 1984 which imposed for the first time mandatory participation in the social security system upon employees of non-profit institutions. Plaintiffs contend that the change in the law violates the free exercise and establishment provisions of the first amendment[1] and the equal protection component of the due process guarantee of the fifth amendment.[2] Defendant has moved for summary judgment, raising procedural obstacles to the suit, and

also asserting that the plaintiffs' claims must fail on the merits. Oral argument was held on this motion on December 30, 1985, supplemental briefs have been submitted, and the motion is ripe for disposition. Also pending are plaintiffs' motions to compel answers to interrogatories and request for production of documents.

### II. *Factual Background.*

Prior to the change in the social security law, nonprofit organizations, including religious ones, meeting the conditions of 26 U.S.C. § 501(c)(3), could participate in the social security system on a voluntary basis. To participate they had to affirmatively choose to do so. See 26 U.S.C. § 3121(k). Otherwise, the organizations were automatically excluded because "employment" for social security purposes was not defined to include work for nonprofit organizations. *See* 26 U.S.C. § 3121(b)(8)(B). The reason for allowing voluntary participation for religious groups was concern for separation of church and state. H.R. No. 25, 98th Cong., 1st Sess. at 16 (1983) *reprinted in* 1983 U.S.Code Cong. Ad. News 219, 233. On April 30, 1983, Congress repealed section 3121(b)(8)(B) with respect to services performed after December 31, 1983, see The Social Security Amendments of 1983, Pub.L. No. 98-21, § 102(b)(1)(C), 97 Stat. 70-71 (1983). Also repealed was section 3121(k). *Id.,* § 102(b)(2).

On July 18, 1984, Congress passed the Deficit Reduction Act of 1984, Pub.L. No. 98-369, 98 Stat. 494 (1984). Section 2603(b) of the Act, 98 Stat. 1128-29, amended section 3121 of the Internal Revenue Code by adding section 3121(w) which provides, in pertinent part, as follows:

> (w) Exemption of churches and qualified church-controlled organizations.—

---

**1.** The first amendment provides, in pertinent part, as follows: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I.

**2.** The fifth amendment, provides, in pertinent part, that "No person shall be ... deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V.

(1) General rule.—Any church or qualified church-controlled organization (as defined in paragraph (3)) may make an election within the time period described in paragraph (2), in accordance with such procedures as the Secretary determines to be appropriate, that services performed in the employ of such church or organization shall be excluded from employment for purposes of title II of the Social Security Act and chapter 21 of this Code. An election may be made under this subsection only if the church or qualified church-controlled organization states that such church or organization is opposed for religious reasons to the payment of the tax imposed under section 3111 [the social security tax imposed on employers].

(2) Timing and duration of election.— An election under this subsection must be made prior to the first date, more than 90 days after the date of the enactment of this subsection, on which a quarterly employment tax return for the tax imposed under section 3111 is due, or would be due but for the election, from such church or organization.... The election may not be revoked by the church or organization....

(3) Definitions.—

(A) For purposes of this subsection, the term "church" means a church, a convention or association of churches, or any elementary or secondary school which is controlled, operated, or principally supported by a church or by a convention or association of churches.

26 U.S.C. § 3121(w) (brackets added).

The 1984 Act also excluded employment with a duly electing church from the definition of employment for social security purposes, The Deficit Reduction Act of 1984, *supra* at section 2603(a)(2), codified at 26 U.S.C. § 3121(b)(8)(B), but changed the treatment of income derived from such employment to self-employment income. *Id.*

at section 2603(c)(2)(C), codified at 26 U.S.C. § 1402(c)(2)(G).

As a result of the 1983 and 1984 amendments churches must now affirmatively elect not to be part of the system if they do not wish to contribute to social security and the election only affects the church's liability. If it elects for religious reasons not to be part of the system, it has no responsibility to pay the employer's share of the tax but the entire burden of the tax then falls upon the employee at the self-employment rate. If the church decides to become a contributing employer, then it pays the employer's share and the employee contributes at the employee rate. The latter rate is less than the self-employment rate. Compare 26 U.S.C. §§ 3101 and 3111 with 26 U.S.C. § 1401(a). Thus, church employees, regardless of whether the church decides to contribute to the system, are now covered under social security. The church remains responsible for withholding the tax and paying it to the government even if it elects out of the system.

Bethel did not make the election. On April 30, 1984, it filed a form 941, employer's federal tax return, for the quarterly period ending March 31, 1984. The return reported that Bethel paid its employees during the quarter a total of $129,890.78 in wages subject to social security taxes. The return also reported social security taxes of $17,795.04 on both Bethel and its employees which were paid on or before April 30, 1984.

On May 3, 1984, on behalf of itself and its employees, Bethel filed a claim for refund of the $17,795.04 in social security taxes, making first amendment objections to the tax. None of the individual plaintiffs made a claim for refund. They had authorized Bethel to make the claim for them. The government denied Bethel's claim on November 15, 1984, waiting until the October 30, 1984 deadline for election out of the system had passed. *See* 26 U.S.C. § 3121(w)(2).[3]

**3.** As noted previously, the 1984 legislation was passed on July 18, 1984. Under section 3121(w)(2), Bethel therefore had until October

30, 1984, to rescind its decision to pay social security taxes as an employer.

Plaintiffs allege the following which we accept as true for the purposes of defendant's motion. Bethel, a Pennsylvania non-profit corporation, is an independent, fundamentalist, Baptist Church, not subject to the control or governance of any national or regional ecclesiastical body. It is supported and governed by its members. The Church operates Grace Independent Mission Board, Bethel Baptist Church Pre-School Day Care Program and Upper Bucks Christian School.

While members of the Church believe that they have a scriptural duty to obey all just laws, they also believe that Christianity must govern their religious obligations. In plaintiffs' view, Scripture requires them as Christians to provide for their own financial security. If they cannot do so, their church must provide it for them. They cannot participate in an effort by government to assume or preempt that religiously mandated responsibility. Additionally, as a matter of religious belief, the church must remain free to choose the means by which it will discharge its responsibility to its members and government cannot interfere with that choice.

A person who works for the Church must be a "born again" Christian and must have actually experienced a religious call to the vocation in which he or she is employed. Plaintiff, James F. Hockman, administrator of the Upper Bucks Christian School, is one of the Church's employees. He considers his position a religious vocation by which he is fulfilling God's calling upon his life to oversee the education of young Christians by his service to Bethel. He makes less money working for the Church than he could in secular society as a school administrator but does so because of his beliefs. The other plaintiff employees, a teacher, the Church secretary, and maintenance men, echo Mr. Hockman's sentiments. Other plaintiffs are members of the Church but not employees. They are parents of children at Upper Bucks Christian School who have sent their children there to obtain an education centered on the Bible. They have made financial sacrifices to pay the required tuition.

In 1978, to fulfill its responsibility to its employees, the Church instituted a program of benefits, including life insurance, disability coverage, a pension program and medical care.

After the government denied Bethel's claim for refund, the Church, two of its officers and its employees filed suit under 28 U.S.C. § 1346(a)(1) to recover the taxes paid. The parent plaintiffs also joined in the suit, seeking redress for claimed injuries to their first amendment rights as well.

### III. *Discussion.*

#### A. *Standard of Review.*

Before discussing the merits of defendant's motion we set forth our standard of review as follows:

> Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only where the moving party establishes that no genuine issue exists as to any of the material facts in the case, and that he is entitled to judgment as a matter of law. *See, e.g., Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). Courts should resolve any doubts as to the existence of issues of material fact against the moving party, and view all inferences in the light most favorable to the nonmoving party. [citation omitted].

*Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 472 (3d Cir.1985) (brackets added).

#### B. *The Court Has Jurisdiction Over the Claims of the Parents And the Employees But Not of the Officers of the Church.*

There are fourteen individual plaintiffs. Dr. Richard Harris is the pastor of the Church and president of the Church corporation. Donald M. Paul is Deacon Board Chairman and his corporate office is vice-president. Seven other plaintiffs are parents of children attending the Church school and the remaining five are employed by the Church and had money withheld from their salaries to pay social security

taxes. Defendant, characterizing this suit as solely one for the refund of taxes, contends that we lack jurisdiction over all of the individuals' claims. The government argues as follows. First, 28 U.S.C. § 1346(a)(1) confers jurisdiction upon a district court only for a suit brought by a "taxpayer" and the non-employee plaintiffs are not taxpayers. Second, 26 U.S.C. § 7422(a) requires that, before a taxpayer suit can be filed, a claim for refund must be made with the Internal Revenue Service and none of the employee plaintiffs have made such a claim. Third, the Church officers can make no claim apart from the Church.

### 1. *Jurisdiction Over the Employee Plaintiffs.*

Section 1346(a)(1) provides, in pertinent part, as follows:

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected ... or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws....

28 U.S.C. § 1346(a)(1).

But before such a suit can be filed 26 U.S.C. § 7422(a) must be satisfied. That section provides, in pertinent part, as follows:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... or of any sum alleged to have been ... in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provi-

sions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

Based upon section 7422(a), the government argues that the employee plaintiffs cannot file claims on their own behalf since they did not file their own administrative claims with the Internal Revenue Service.[4] The government makes this argument even though the employees authorized Bethel to make an administrative claim for them and Bethel did so. Moreover, it attempts to bolster this argument by citing regulations permitting the employees to delegate to their employer, no doubt for the convenience of the agency, the authority to make their claims for them. Thus, defendant points to 26 C.F.R. § 31.6402(a)–(2)(b) which permits an employee to make an administrative claim for refund only when, in part, the employee has not authorized the employer to file a claim and receive refund or credit. It also cites 26 C.F.R. § 31.6402(a)–2(a)(2)(ii) which provides that when an employer claims a refund for employees, it shall state that it has their written consent to do so. Defendant concludes from these provisions that the employee plaintiffs have "irrevocably elected to have Bethel file a claim and prosecute this suit on their behalf," (Defendant's brief in support of its motion for summary judgment at 15), and have foregone the "option of proceeding individually." (*Id.*). It also cites *Kreiger v. United States*, 539 F.2d 317 (3d Cir.1976) in its support. The government emphasizes that it is not attempting to avoid adjudication of the employees' claims. Its more modest goal is to eliminate the employees as parties. Their claims can still be raised on their behalf by Bethel.

Section 7422(a) is the controlling provision here. It provides that no lawsuit can be maintained "until *a claim* for refund ... has been duly filed ... according to the provisions of law in that regard, and the

**4.** Defendant notes that plaintiffs have not asserted that the employee plaintiffs were the same employees who paid the social security taxes subject to the refund claim. Defendant does not seriously pursue this argument and we believe that in light of plaintiffs' response to defendant's statement of material fact no. 8, we can safely conclude that the employee plaintiffs were, in fact, the same employees who paid the social security taxes.

regulations ... established in pursuance thereof." (emphasis added). The section merely provides that *a* claim must be filed first. It does not require that the individual must have personally filed an administrative claim before seeking redress in court. Moreover, the claim only has to be filed in accordance with the regulations. The employee plaintiffs did that here. The regulations permitted them to authorize their employer to seek a refund on their behalf. Significantly, the regulations only deal with employees' rights to seek a refund from the agency and nowhere warn that a failure to seek a refund directly would preclude them from bringing a law suit. *Kreiger* is inapposite because the court there only concluded that the failure to file a *timely* claim for refund would bar a suit. The timeliness of the refund claim is not an issue in the instant case.

Defendant's position is contradicted by *Eighth Street Baptist Church, Inc. v. United States*, 431 F.2d 1193 (10th Cir. 1970) (per curiam). In that case, the court held that section 1346(a)(1) did not confer jurisdiction upon the district court to entertain a church's first amendment challenge to the requirement that it withhold income taxes from its employees' salaries and pay them to the government. Citing *First National Bank v. United States*, 265 F.2d 297 (3d Cir.1959), the court concluded that the "taxpayers" for the purposes of section 1346(a)(1) were the employees who actually had income taxes withheld from them. Accordingly, "[i]f the amount claimed was wrongfully assessed and collected, the employees, not the Church, would be entitled to sue." *Eighth Street Baptist Church*, 431 F.2d at 1194 (brackets added). Further, defendant's position that the Church can still raise the employees' claims by virtue of the regulations, even though the employees cannot be parties to this action, conflicts with a basic rule of standing that one person cannot raise the claims of another. *See Grove v. Mead School District No. 354*, 753 F.2d 1528 (9th Cir.1985).

■ We conclude that the prerequisites of section 7422(a) were satisfied in connec-

tion with the employees' claims when Bethel filed a claim for refund with the government. Because an authorized claim for refund of the employees' taxes was made, the employees could file suit on their own behalf.

2. *The Parent Plaintiffs.*

Since the parent plaintiffs had no social security taxes withheld from them by Bethel, they obviously cannot invoke section 1346(a)(1) to sustain jurisdiction. They are not taxpayers for the purposes of this suit. *See First National Bank, supra.* Plaintiffs recognize this and contend that the parents can assert jurisdiction under 28 U.S.C. § 1346(a)(2) which provides, in pertinent part, that district courts shall have original jurisdiction of "[a]ny ... civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution or any Act of Congress...." (brackets added). We agree. *See also* complaint at ¶ 1, setting forth the jurisdictional bases of the complaint.

■ The parents contend that their first amendment rights are threatened because the social security tax makes it financially more difficult to give their children a religious education at Upper Bucks Christian School. "One aspect of the religious freedom of parents is the right to control the religious upbringing and training of their minor children." *Grove, supra*, 753 F.2d at 1531. The parent plaintiffs accordingly have standing, and can invoke the jurisdiction of this court under section 1346(a)(2), to redress an alleged violation of that first amendment right. *Grove, supra.* In so concluding, we reject defendant's characterization of this suit as simply one for the refund of taxes.

3. *Church Officers and Administrators.*

■ Richard A. Harris, Bethel's pastor and president of the corporation, and Donald M. Paul, Deacon Board Chairman and vice president, are also plaintiffs. Their claims must be dismissed because they can

allege no injury distinct from that of the Church which, as a corporate body, can sue in its own name.

## C. Bethel's Failure to Elect Out of the Social Security System Does Not Bar This Suit.

■ Defendant claims that Bethel could have avoided the adverse consequences of contributing to the social security system by simply electing under 26 U.S.C. § 3121(w) not to join. Having failed to make the election, Bethel cannot seek redress in this action. Defendant cites numerous cases in which the courts have refused to relieve a taxpayer from the adverse consequences of an election made under a taxing statute. Moreover, defendant points out that courts have avoided constitutional questions whenever a case can be disposed of on other grounds. Accordingly, we should rely upon Bethel's conduct here to dismiss this suit without reaching the constitutionality of the social security amendments. Plaintiffs, citing *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), contend that no real choice was offered by the amendments. Plaintiffs' first amendment rights would have been infringed regardless of what choice Bethel made under the amendments. We agree with plaintiffs.

Defendant's cases dealing with elections under the taxing statutes are inapposite here. None of these cases dealt with the constitutionality of the taxing statute at issue in them; only with the taxpayer's attempt to avoid the adverse tax consequences of what was later perceived as an unwise election. *See, e.g. J.E. Riley Investment Co. v. Commissioner*, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36 (1940).

The situation here is entirely different. The choice offered to Bethel by the amendments implicated religious beliefs regardless of the alternative taken by the Church. If it elected out of the system, the Church would have avoided secular interference with its beliefs on Christian self-support but its employees would have paid social security taxes at the self-employment rate. The Church would then have been required to raise its workers' salaries out of justice to them and less funds would have been available for Church ministries.[5] Of course, the Church decided to contribute and its belief concerning Christian self-support has been directly implicated. Additionally, because the Church increased its workers' salaries to cover the money lost to the tax, the second harm previously mentioned has also resulted—a decrease of resources the church can allocate to its ministries.

In any event, defendant's argument does not address the employees' concerns at all. They are subject to the social security tax regardless of any decision made by the Church. Their religious beliefs on self-support are allegedly infringed and the harm could not have been avoided by Bethel's election. We reject defendant's election argument and proceed to the merits of the complaint.

## D. The Legislation Does Not Violate the Free Exercise Clause.

As noted previously, the Church and its members believe that Christians must provide for their own financial security but if they cannot do so, the Church must provide for them by means chosen by the Church. Additionally, its employees are exercising a religious vocation by working for the Church. The Church and its members allege that the 1983 and 1984 social security amendments prevent them from exercising religious autonomy in these areas. A system of retirement benefits has now been imposed upon them. Employees are pressured into leaving their vocations and pursuing occupations in secular society to make up for income lost to the tax. An increase in salaries would not solve the

---

**5.** Defendant argues that Bethel's perceived obligation to increase its employees' wages is not a religious one. Defendant does not seriously pursue this, however, and we conclude, based upon Bethel's argument as a whole, that it believes it has a religious duty to increase employees' wages because of the social security tax.

problem. It would only divert funds from other areas. In that regard, the tax will diminish the Church's ability to operate its ministries. Payments into the system have already forced the Church to raise tuition for its school and to borrow money at commercial rates. Plaintiffs assert other adverse consequences of the legislation which we need not detail for the purposes of defendant's motion.

■ In *Bob Jones University v. United States*, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983), the United States Supreme Court summarized the standard to be applied to free exercise claims as follows:

> This Court has long held the Free Exercise Clause of the First Amendment to be an absolute prohibition against governmental regulation of religious beliefs, *Wisconsin v. Yoder*, 406 U.S. 205, 219 [92 S.Ct. 1526, 1535, 32 L.Ed.2d 15] (1972); *Sherbert v. Verner*, 374 U.S. 398, 402 [83 S.Ct. 1790, 1793, 10 L.Ed.2d 965] (1963); *Cantwell v. Connecticut*, 310 U.S. 296, 303 [60 S.Ct. 900, 903, 84 L.Ed. 1213] (1940). As interpreted by this Court, moreover, the Free Exercise Clause provides substantial protection for lawful conduct grounded in religious belief, *see Wisconsin v. Yoder, supra* [406 U.S.], at 220 [92 S.Ct. at 1535]; *Thomas v. Review Board of Indiana Employment Security Div.*, 450 U.S. 707 [101 S.Ct. 1425, 67 L.Ed.2d 624] (1981); *Sherbert v. Verner, supra* [374 U.S.], at 402–403 [83 S.Ct. at 1793]. However, "[n]ot all burdens on religion are unconstitutional.... The state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest." *United States v. Lee*, 455 U.S. 252, 257–58 [102 S.Ct. 1051, 1055, 71 L.Ed.2d 127]

(1982). *See, e.g., McDaniel v. Paty*, 435 U.S. 618, 628, and n. 8 [98 S.Ct. 1322, 1328, and n. 8, 55 L.Ed.2d 593] (1978); *Wisconsin v. Yoder, supra* [406 U.S.], at 215 [92 S.Ct. at 1533]; *Gillette v. United States*, 401 U.S. 437 [91 S.Ct. 828, 28 L.Ed.2d 168] (1971).

*Id.* at 603, 103 S.Ct. at 2034–35, 76 L.Ed.2d at 180–81.

The limitation upon religious liberty may be justified only when there is no less restrictive means to accomplish the governmental interest. *Id.*, (citing *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)).[6]

Plaintiffs' free exercise claim is two pronged. One prong, based solely upon religious belief and independent of any claimed financial hardship which would impede the Church's ministries, is based upon the religious obligation of Bethel and its members to care for their own when they cannot do so themselves and not to participate in, or accept benefits from, a secular system with similar goals. The second prong is based upon diversion of funds from protected religious activity.

Defendant relies solely upon *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) to defeat plaintiffs' entire free exercise claim. Indeed, defendant contends that *Lee* is indistinguishable from the instant case, controls the outcome here, and requires us to find against plaintiffs.

In *Lee*, the Supreme Court held that the free exercise clause was not violated by requiring an Amishman, an employer of other Amish on his farm and in his carpentry shop, to contribute to the social security system. The Amish believe that they are religiously obligated to care for their own elderly and needy and can not pay into the

---

**6.** We therefore reject defendant's assertion that it only has to show, in accordance with *Lee v. United States, infra,* that the government's interest is compelling and that accommodating plaintiffs' religious belief would unduly interfere with the fulfillment of that interest. The Court in *Lee* also stated that a limitation on religious liberty could also be justified only by

showing that the limitation "is essential to accomplish an overriding governmental interest." *Infra* at 257–58, 102 S.Ct. at 1055, 71 L.Ed.2d at 132. Implicit in this standard is the well established criterion, as evidenced by *Bob Jones University* which cited *Lee,* that the government use the least restrictive means. *See Dayton Christian Schools, infra.*

social security system or accept benefits from it. Accepting the sincerity of these beliefs, the Supreme Court noted that the government's interest in mandatory and continuous participation in the system is very high. The program is nationwide, the largest domestic governmental program, and requires mandatory contributions from covered employers and employees. The Court then determined the governmental interest could not accommodate the Amish belief.

Defendant equates Bethel with the Amish employer in *Lee*. By choosing to employ a school administrator, secretary, maintenance men, etc., Bethel "enter[ed] into commercial activity." *Id.* at 261, 102 S.Ct. at 1057, 71 L.Ed.2d at 134 (brackets added). Since the religious objection to the social security tax is similar to the one raised in *Lee*, the claim here must be rejected.

Plaintiffs argue that *Lee* is inapposite. Bethel is not engaged in a commercial activity despite defendant's attempt to characterize it as doing so by narrowly focusing upon the jobs performed by the employee plaintiffs. Second, the Court's discussion in *Lee* of the government's overriding interest took place before the social security amendments at issue here imposed the tax upon church employees. The Supreme Court has never passed upon the validity of imposing the social security tax directly upon a church or its employees. Plaintiffs contend that they will build a record to show that here, unlike in *Lee*, the government's interest must yield to their own. Specifically, they will show that the social security program would not suffer financially if Bethel, or a church like it, was permitted out of the system but if it is required to continue in it, grave consequences would befall it. Plaintiffs also point to interference with the administration of the Church and the use of the Church as part of the machinery of a governmental social program. None of these factors were present in *Lee*.

Plaintiffs are correct in distinguishing *Lee* on the basis of its commercial setting.

Certainly, the Supreme Court was concerned there about the effect of permitting a taxpayer to bring his religious beliefs into the marketplace. It concluded its opinion in *Lee* by stating:

> When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity.... The tax imposed on employers to support the social security system must be uniformly applicable to all, except as Congress provides explicitly otherwise.

*Id.* at 261, 102 S.Ct. at 1057, 71 L.Ed.2d at 134–35 (footnote omitted).

Thus, we reject defendant's attempt to bring this case within the purview of *Lee* by focusing solely on the employees. Certainly, viewed in isolation, a secretary's duties would appear to be no different whether performed for a church or a business. Yet when performed for a church, they may be in furtherance of the church's goals and therefore serve a religious purpose. *See Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) (the distribution of handbills may be for a commercial purpose but when done to promote religious belief, it is protected by the first amendment).

But we also reject plaintiffs' characterization of the claim in *Lee* as a bare attempt to escape taxes on a secular business by resort to a religious belief. That belief was just as sincerely held as in the instant case and qualitatively no different. It is immaterial that the claim was made by a lay person rather than a minister or a church. *See Ballinger v. Commissioner*, 728 F.2d 1287 (10th Cir.1984).

Because of the similarity of religious claims, we believe that *Lee* does control this prong of Bethel's free exercise claim but for a reason only touched upon by defendant at oral argument. As noted by the defendant, the Court in *Lee* specifically held that the government had an overriding interest in maintaining mandatory partic-

ipation by covered employers and employees. The Court then broadly stated its concerns in this area of the law, however, as follows:

The difficulty in attempting to accommodate religious beliefs in the area of taxation is that "we are a cosmopolitan nation made up of people of almost every conceivable religious preference." *Braunfeld [v. Brown], supra* [366 U.S. 599], at 606 [81 S.Ct. 1144, 1147, 6 L.Ed.2d 563 (1961)]. The Court has long recognized that balance must be struck between the values of the comprehensive social security system, which rests on a complex of actuarial factors, and the consequences of allowing religiously based exemptions. To maintain an organized society that guarantees religious freedom to a great variety of faiths requires that some religious practices yield to the common good. Religious beliefs can be accommodated, *see e.g., Thomas, supra; Sherbert, supra,* but there is a point at which accommodation would "radically restrict the operating latitude of the legislature." *Braunfeld, supra,* at 606 [81 S.Ct. at 1147].

Unlike the situation presented in *Wisconsin v. Yoder, supra,* it would be difficult to accommodate the comprehensive social security system with myriad exceptions flowing from a wide variety of religious beliefs. The obligation to pay the social security tax initially is not fundamentally different from the obligation to pay income taxes; the difference—in theory at least—is that the social security tax revenues are segregated for use only in furtherance of the statutory program. There is no principled way, however, for purposes of this case, to distinguish between general taxes and those imposed under the Social Security Act. If, for example, a religious adherent believes war is a sin, and if a certain percentage of the federal budget can be identified as devoted to war-related activities, such individuals would have a similarly valid claim to be exempt from paying that percentage of the income tax. The tax system could not function if denom-

inations were allowed to challenge the tax system because tax payments were spent in a manner that violates their religious belief. *See, e.g., Lull v. Commissioner,* 602 F.2d 1166 (C.A.4 1979), *cert. denied,* 444 U.S. 1014 [100 S.Ct. 664, 62 L.Ed.2d 643] (1980); *Autenrieth v. Cullen,* 418 F.2d 586 (C.A.9 1969), *cert. denied,* 397 U.S. 1036 [90 S.Ct. 1353, 25 L.Ed.2d 647] (1970). Because the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax.

*Id.,* 455 U.S. at 259–60, 102 S.Ct. at 1056–57, 71 L.Ed.2d at 133–34 (footnote omitted.)

■ These same concerns dictate that the plaintiffs' free exercise claim based solely upon a religious belief of caring for their own must fail. The broad public interest in maintaining a sound tax system is of such high order that religious belief in conflict with the payment of taxes affords no basis for resisting the tax.

*Kahn v. United States,* 753 F.2d 1208 (3d Cir.1985) presented an analogous situation. In *Kahn,* the taxpayer filed an income tax return claiming a war tax deduction. The government imposed a civil penalty of $500 under 26 U.S.C. § 6702 for a frivolous income tax return, a return claiming a deduction for which there was no basis in law or fact. Upholding the statutory section against the taxpayer's claim of invalidity under the first amendment's guarantee of freedom of speech, the Third Circuit Court of Appeals, reading *Lee* expansively, held:

Congress enacted section 6702 in order to improve taxpayer compliance in light of the "rapid growth" in protest returns. The public interest served by section 6702 is of such a "high order" that an assertion of first amendment rights do not outweigh the necessity of maintaining a functional revenue system. *See United States v. Lee,* 455 U.S. 252, 260, 102 S.Ct. 1051, 1056, 71 L.Ed.2d 127 (1982). This interest has been found sufficiently compelling to outweigh chal-

lenges to the administration of the tax laws based on the free exercise of religion. *See, e.g., United States v. Lee, supra; United States v. Grayson County State Bank,* 656 F.2d 1070 (5th Cir. 1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1982); *Lull v. Commissioner,* 602 F.2d 1166 (4th Cir. 1979), *cert. denied,* 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 643 (1980); *Drefchinski [v. Regan,* 589 F.Supp. 1516 (W.D. La.1984) ], *supra.*

*Id.* at 1217. *See also Harper v. United States,* 587 F.Supp. 1056, 1058 n. 1 (E.D.Pa. 1984).

The courts in *Wall v. United States,* 756 F.2d 52 (8th Cir.1985) (per curiam) and *Welch v. United States,* 750 F.2d 1101 (1st Cir.1985) also interpreted *Lee* in a similar fashion in other challenges to section 6702. In *Wall,* the court, citing *Lee,* stated: "The Supreme Court has held, however, that the necessities of revenue collection through a sound tax system raise governmental interests sufficiently compelling to outweigh the free exercise rights of those who find the tax objectional on bona fide religious grounds." 756 F.2d at 53. In *Welch* the First Circuit Court of Appeals read *Lee* as follows:

> In a recent opinion, the United States Supreme Court laid to rest whatever possible remaining basis there might have been for claiming that tax liability could be reduced because of a sincerely held, conscientious objection to the uses to which taxes are put. *See, United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982). In the *Lee* case, a member of the Old Order Amish sought to avoid the payment of social security taxes on the basis of his religiously based opposition to the social security system. In that case, as in the one at bar, there was no question raised as to the sincerity of the taxpayer's religious convictions. However, the court held that "religious belief in conflict with the payment of taxes affords no basis for resisting the tax," 455 U.S. at 260, 102 S.Ct. at 1056, in view of the important

public interest in maintaining a sound tax system.

750 F.2d at 1107.

Relying upon this rationale, the court upheld the constitutionality of section 6702 against first amendment claims of free speech and the free exercise of religion. The compelling state interest outweighing these fundamental rights was the necessity of maintaining a sound revenue system.

■ Thus, both sides in the instant case have read *Lee* too narrowly. The government interest at stake there was not simply maintaining mandatory participation in the social security system by covered employers and employees. Rather, the government's interest was far more fundamental—preserving the integrity of the tax collection system. We conclude that that interest is a compelling one here as well and cannot be satisfied by any less restrictive means. It outweighs the plaintiffs' religious belief that they cannot participate in any system other than their own to provide for the welfare of Church members. To conclude otherwise would, as pointed out by the Court in *Lee,* open the door to equally sincere religious objections for tax dollars designated for specific purposes.

The second prong of plaintiffs' argument is that, unlike the taxpayer in *Lee,* the imposition of the social security tax drains the Church treasury of funds that could be used to support the Church's ministries. Plaintiffs are religiously opposed to a tax on religious exercise, and citing *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), they assert that " '[i]f the purpose or effect of a law is to impede the observance of one or all religions ... that law is constitutionally invalid even though the burden may be characterized as indirect.' " *Id.* at 404, 83 S.Ct. at 1794, 10 L.Ed.2d at 970 (brackets in *Sherbert*) (quoting *Braunfeld v. Brown,* 366 U.S. 599, 607, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563, 568 (1961)).

■ Defendant is not taxing the exercise of religion here. Such a tax would be unconstitutional. *See Murdock v. Penn-*

*sylvania, supra.* The social security tax is a non-discriminatory, uniform tax with a secular purpose. We therefore reject plaintiffs' characterization of it as one upon religious exercise. (See plaintiffs' brief in opposition to defendant's motion for summary judgment at 6).

▮ Of course, a regulation neutral on its face may still be unconstitutional if it unduly burdens the exercise of religion. *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). But we believe it illustrates the "difficult nature of the fine distinctions required in inquires pursuant to the religion clauses," *Dayton Christian Schools, Inc. v. Ohio Civil Rights Comm'n,* 766 F.2d 932, 945 n. 22 (6th Cir. 1985), that this court can point to cases which have stated, contrary to plaintiffs' assertion, that an indirect burden upon free exercise is constitutional. *See Hatcher v. Commissioner,* 688 F.2d 82 (10th Cir.1979) (religious challenge to social security tax on self-employment income rejected because the law merely imposes an indirect burden on free exercise); *Johnson v. United States,* 422 F.Supp. 958 (N.D.Ind.1976) (income tax is constitutional although it may have an incidental effect upon the religious practices of married persons), *aff'd sub nom., Barter v. United States,* 550 F.2d 1239 (7th Cir.1977) (per curiam), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978). *Ballinger, supra,* (imposition of social security tax upon a minister who failed to make a timely, statutory claim for exemption did not violate first amendment because it placed only indirect burden on religious freedom).[7]

▮ We are sensitive to plaintiffs' claim that the social security tax inhibits the free exercise of their religion because money used for the tax cannot be used for religious activities. Undoubtedly, the tax has

this effect.[8] In *Murdock, supra,* the Court expressed its concern in this area. *Murdock* dealt with an ordinance, neutral on its face, which imposed a fee upon door-to-door solicitors. Jehovah's Witnesses challenged it on first amendment grounds. The Court noted that:

> The power to tax the exercise of a privilege is the power to control or suppress its enjoyment. [citation omitted]. Those who can tax the exercise of this religious practice can make its exercise so costly as to deprive it of the resources necessary for its maintenance.·

319 U.S. at 112, 63 S.Ct. at 874, 87 L.Ed.2d at 1298 (brackets added).

Although the Court struck down the ordinance, it nevertheless emphasized that:

> We do not mean to say that religious groups and the press are free from all financial burdens of government. See *Grosjean v. American Press Co.,* 297 U.S. 233, 250 [56 S.Ct. 444, 449, 80 L.Ed. 660 (1936)]. We have here something quite different, for example, from a tax on the income of one who engages in religious activities or a tax on property used or employed in connection with those activities. It is one thing to impose a tax on the income or property of a preacher. It is quite another thing to exact a tax from him for the privilege of delivering a sermon.

*Id.* at 112, 63 S.Ct. at 874, 87 L.Ed. at 1298.

And in *Braunfeld, supra,* Chief Justice Warren said the following in upholding Sunday closing laws:

> Statutes which tax income and limit the amount which may be deducted for religious contributions impose an indirect economic burden on the observance of the religion of the citizen whose religion requires him to donate a greater amount to

---

7. Indeed, plaintiffs' passage from *Braunfeld,* quoted in *Sherbert,* immediately went on to note that: "if the State regulates conduct by enacting a general law within its power ... the statute is valid despite its indirect burden on religious observance...." *Braunfeld,* 366 U.S. at 607, 81 S.Ct. at 1148, 6 L.Ed.2d at 568.

8. In his affidavit in opposition to the motion for summary judgment, Pastor Harris asserts that the Church has lost over $160,000 to the social security tax for 1984 and 1985, (¶ 24a), and that a church making the election in another state lost over 80% of its teachers because they could not afford the reduction in disposable income resulting from the tax.

his church; statutes which require the courts to be closed on Saturday and Sunday impose a similar indirect burden on the observance of the religion of the trial lawyer whose religion requires him to rest on a weekday. The list of legislation of this nature is nearly limitless. 366 U.S. at 606, 81 S.Ct. at 1147, 6 L.Ed.2d at 568 (Opinion of Warren, C.J., concurred in by Black, Clark and Whitaker, JJ.).

The situation here is analogous. The social security tax imposes an indirect burden upon Bethel's members' observance of their religion. Members may be required to increase their contributions to the church as a result of the recent amendments but this does not render the law unconstitutional.

Plaintiffs' claim of financial hardship, or diversion of funds from a constitutionally protected activity, could be made in every case in which constitutional challenges have been made to taxation. Thus, in *Graves v. Commissioner*, 579 F.2d 392 (6th Cir.1978) (per curiam), the taxpayers who objected on religious grounds to expenditure of federal funds to finance the Vietnam War could also have asserted that the income tax diverted funds from their first amendment efforts to end the war.

Significantly, plaintiffs have not challenged the imposition of the income tax on Bethel's employees. That tax also reduces the employees' take home pay and if it were not imposed, would presumably permit the Church to pay lower wages and spend more money on its ministries. Of course, plaintiffs could distinguish the income tax by its different source. That tax is paid out of the employees' wages while Bethel, based upon its perception of its religious obligation to its employees, must pay the employer's share of the social security tax directly from the Church treasury. We believe, however, that plaintiffs' argument, and the better view in any event, ignores such bookkeeping technicalities. Consistent with such a distinguishing of the income tax, Bethel would have to admit that it could also have avoided the burden upon its treasury by making the election and shifting the social security tax totally to the employees at the self-employment rate. But that would have contradicted Bethel's claim that it would have been religiously bound to increase its employees' wages to make up for the decrease in disposable income. So also would it have been bound to take into account the income tax.

In our view, that Bethel has not challenged the constitutionality of the income tax establishes that its real complaint is not with the constitutionality of the social security tax but with its novel application to the Church's employees. At the time of the 1983 and 1984 social security amendments the income tax was already applicable to the Church's employees, and thus already taken into account, in soliciting donations and establishing wage rates. On the other hand, the social security tax was a sudden addition to the costs of running the Church and the Church has had trouble adjusting to it.

Plaintiffs quote *Sherbert, supra,* contending that " '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation' " upon free exercise. 374 U.S. at 406, 83 S.Ct. at 1795, 10 L.Ed.2d at 972 (brackets in *Sherbert*) (quoting *Thomas v. Collins*, 323 U.S. 516, 530, 65 S.Ct. 315, 323, 89 L.Ed. 430, 440 (1945)), and that only religious conduct posing "some substantial threat to public safety, peace or order," *id.,* 374 U.S. at 403, 83 S.Ct. at 1793, 10 L.Ed.2d 970, may be regulated.

But in *Sherbert,* the challenged statute disqualified a Seventh-day Adventist from unemployment compensation because she would not accept Saturday work. The unemployment compensation statute did not force this condition upon a Sunday worshipper. The state could advance no compelling state interest for the discrimination—only the possibility that fraudulent claims would be filed. Extension of unemployment benefits to the Sabbatarian only restored the required neutrality to the statute. Obviously, plaintiff's religious con-

duct was not a grave abuse or danger or threat to the public peace, safety or order.

In sum, we recognize that the Church undoubtedly has suffered financial hardship from the imposition of the social security tax but because the government has an overriding, compelling interest in maintaining a sound revenue system, this is not an unconstitutional burden.

### E. *The Legislation Does Not Violate the Establishment Clause.*

██ To be constitutional under the establishment clause, legislation must meet all three parts of the following standard. First, it must have a secular legislative purpose. Second, its principal or primary effect cannot advance or hinder religion. Third, it cannot foster an excessive government entanglement with religion. *Witters v. Washington Department of Services For the Blind,* — U.S. —, 106 S.Ct. 748, 88 L.Ed.2d 846 (1986) (citing *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)). *See also May v. Cooperman,* 780 F.2d 240 (3d Cir.1985).

██ Plaintiffs make no argument concerning the first two parts of the test but contend that the social security amendments foster excessive government entanglement with religion. According to plaintiffs:

> The program thrusts the Government into the employment relationships of the Church with its members in their common ministry.... It calls for governmentally supervised record keeping and surveillance with respect to the program. It also calls for continuous reporting by the Church to Government authorities— precisely the type of "sustained and detailed administrative relationships" warned against in *Lemon.*

(Plaintiffs' brief in opposition to defendant's motion for summary judgment at 45). Conversely, defendant argues that the legislation only requires that Bethel withhold the tax at the statutory rate and pay it to the government along with filing an information return. This does not entangle church and state. Defendant points out that Bethel has a similar obligation with respect to the income tax.

We agree with defendant. In *Eighth Street Baptist Church, Inc. v. United States,* 291 F.Supp. 603 (D.Kan.1968), *aff'd,* 431 F.2d 1193 (10th Cir.1970), a church challenged on first amendment grounds the requirement that it withhold income taxes from the salaries of its non-ministerial employees. Relying upon *Murdock, supra,* the district court held that the requirement did not interfere with plaintiff's free exercise rights. The same conclusion applies here to the withholding of the social security tax and plaintiffs' specific claim of entanglement.

Plaintiffs have cited *Lemon, supra; Public Funds For Public Schools v. Marburger,* 358 F.Supp. 29 (D.N.J.1973), *aff'd mem.,* 417 U.S. 961, 94 S.Ct. 3163, 41 L.Ed.2d 1134 (1974); *New York v. Cathedral Academy,* 434 U.S. 125, 98 S.Ct. 340, 54 L.Ed.2d 346 (1977); *Aguilar v. Felton,* — U.S. —, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985), and *Dayton Christian Schools, supra,* to support their contention that the legislation at issue here unconstitutionally entangles church and state. All of these cases are easily distinguishable. The first four dealt with state statutes giving aid to sectarian schools. The statutes were declared unconstitutional because, in part, they would have required the state to oversee activities in the schools and inevitably lead it into conflict with the religious bodies involved concerning religious practice or education. In *Dayton Christian Schools* the Ohio Civil Rights Commission had attempted to assert jurisdiction over a religious school based upon its refusal to renew a teacher's contract. The court held that such jurisdiction would have violated the first amendment because it would have necessarily involved the state in employment decisions on the teaching staff at the school and in recurring employment disputes. Commission inquiry into intent, motive, causation and pretext in hiring and firing decisions would also have necessarily involved the state in assessment of religious decisions.

None of the above concerns is present in the instant case. We conclude that the

1983 and 1984 social security amendments do not violate the establishment clause of the first amendment.

### F. *The Equal Protection Component of the Fifth Amendment.*

The fifth amendment requires certain equal protection guarantees from the federal government. *See Hampton v. Mow Sun Wong,* 426 U.S. 88, 90 S.Ct. 1895, 48 L.Ed.2d 495 (1976). Plaintiffs have made two arguments on equal protection grounds. In their complaint, they allege that the legislation violates equal protection because the employee plaintiffs are treated differently from the church's pastor. The pastor can claim exemption from social security taxes, see 26 U.S.C. § 1402(e), but the non-ministerial employees cannot. In their brief, plaintiffs contend that the amendments violate equal protection because employees of electing churches are treated differently from employees in general. The employees are subject to the social security tax at the self-employment rate but receive none of the benefits conferred upon self-employed individuals by other tax sections.[9]

■■■■■ Plaintiffs do not elaborate on the latter equal protection argument other than pointing out the difference and claiming that it is "blatantly offensive" to equal protection. On this ground alone it can be rejected. Moreover, we agree with defendant that plaintiffs cannot advance this claim for the simple reason that the employee plaintiffs here are not being taxed at the self-employment rate since the Church decided to contribute the employer's share. Obviously, abstract claims of defects in the statutory scheme are not justiciable.

### G. *Plaintiffs' Motion to Compel Discovery And Argument That Summary Judgment Is Inappropriate In Constitutional Cases.*

As noted in Part I of this memorandum, plaintiffs had moved to compel discovery

from defendant. They wanted defendant to answer interrogatories and a request for production of documents. The government resisted the discovery, contending that we could dispose of plaintiffs' claims as a matter of law. Plaintiffs generally sought information indicating the differences between the present and the former social security system in terms of non-profit institutions, including religious ones now covered, and the additional revenue realized from the amendments. They also wanted copies of government reports and records leading up to the social security amendments. Plaintiffs anticipated that the information would have supported their argument that coverage of religious institutions, or those objecting like Bethel, was not essential to the government's interest in the financial stability of the social security system.

Because we have concluded that defendant is entitled to judgment as a matter of law, the discovery motions will be denied. No material factual issues are in dispute which would be resolved by permitting discovery. Our conclusion also disposes of plaintiffs' argument that summary judgment should not normally be granted in constitutional cases. *See, e.g., Dispatch, Inc. v. City of Erie,* 364 F.2d 539 (3d Cir. 1966). When appropriate in such cases, the court will enter a summary judgment. *See Associated Film Distribution Corp. v. Thornburgh,* 520 F.Supp. 971 (E.D.Pa. 1981), *rev'd on other grounds,* 683 F.2d 808 (3d Cir.1982).

We will issue an appropriate order.

### ORDER AND JUDGMENT

AND NOW, this 6th day of March, 1986, it is ordered that:

1. The claims of plaintiffs, Richard A. Harris and Donald M. Paul, are dismissed.

---

**9.** Plaintiffs may not have briefed the pleaded argument because if it was successful, it would require us to strike down the minister's exemption. *See Templeton v. Commissioner,* 719 F.2d

1408 (7th Cir.1983). In any event, the exemption does not violate equal protection. *Id.* at 1412 n. 5.

2. Plaintiffs' motions to compel answers to interrogatories and request for production of documents are denied.

3. Defendant's motion for summary judgment is granted and judgment is entered for defendant.

4. The Clerk of Court shall close this file.