**SOUTH RIDGE BAPTIST CHURCH, Plaintiff,**

v.

**INDUSTRIAL COMMISSION OF OHIO, et al., Defendants.**

**No. C–2–86–875.**

United States District Court, S.D. Ohio, E.D.

Dec. 28, 1987.

Daniel J. Loomis, Gibbs & Craze Co., L.P.A., Cleveland, Ohio, for plaintiff.

Merl H. Wayman, Asst. Atty. Gen., Worker's Compensation Section, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

GRAHAM, District Judge.

Plaintiff, South Ridge Baptist Church of Conneaut, Ohio, has filed the present action under 42 U.S.C. § 1983 against the Industrial Commission of Ohio and the Ohio Bureau of Workers' Compensation. Plaintiff is a non-profit religious organization. Defendants are agencies of the State of Ohio which administer the statutory workers' compensation program. Plaintiff seeks declaratory relief in the form of a judgment declaring that the Ohio workers' compensation statutes and regulations are unconstitutional as applied to plaintiff. In addition, plaintiff requests that defendants be enjoined from enforcing the workers' compensation laws against plaintiff.

Plaintiff alleges in its complaint that it possesses a sincerely-held religiously based objection to participating in or contributing to the Ohio Workers' Compensation System. Plaintiff contends that the statutory scheme constitutes a threat to plaintiff's right to free exercise of religion in violation of the First Amendment of the United States Constitution. Plaintiff's next claim is that the state program presents an impermissible risk of excessive government entanglement in the affairs of the church and interferes with church management prerogatives concerning the use of money and effort. Plaintiff further claims that the Ohio General Assembly in passing the workers' compensation laws did not intend to include religious organizations such as plaintiff within the scope of those laws, and that to include plaintiff within the coverage of those laws would violate the Ohio Constitution.

The present case was originally filed on May 27, 1983 in the United States District Court for the Northern District of Ohio. Venue was found to be proper in the Southern District of Ohio, and the case was transferred to this court on July 11, 1986. Defendants filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted on July 31, 1987. In light of the affidavits filed with the record, the court on October 1, 1987 elected to treat defendants' motion to dismiss as a motion for summary judgment under Fed.R.Civ.P. 56, and allowed the parties the opportunity to present additional argument and evidence.

Defendants' motion to dismiss includes three branches. Defendants first argue that plaintiff's suit is barred by the principles of *res judicata* and collateral estoppel in light of the decision of the Lorain County Court of Appeals in *Victory Baptist Temple v. Industrial Commission of Ohio*, 2 Ohio App.3d 418, 442 N.E.2d 819 (1982). In that case, the plaintiff church sought exemption from the payment of workers' compensation premiums on First Amendment religious grounds. The Court of Appeals held that the Ohio workers' compensation laws as applied to plaintiff did not violate the First Amendment.

■ In actions under 42 U.S.C. § 1983, the preclusive effect of a prior state court judgment is to be determined by reference to the law of the state where the judgment

was rendered. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

■ Under Ohio law, a final judgment on the merits is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them. *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943). Before *res judicata* can be applied, the parties to the subsequent action must be identical to those of the former action or be in privity with them. *Cole v. Ottawa Home and Savings Ass'n*, 18 Ohio St.2d 1, 246 N.E.2d 542 (1969). One is deemed to be in privity if he succeeds to the estate or interest of another. *Whitehead v. General Telephone Co.*, 20 Ohio St.2d 108, 254 N.E. 2d 10 (1969). Privity is a succession of interest or relationship to the same thing. *City of Columbus v. Union Cemetery Ass'n*, 45 Ohio St.2d 47, 341 N.E.2d 298 (1976).

The court finds no indication in the record that plaintiff was involved in any way in the *Victory Baptist Temple* litigation, or that it is otherwise in privity with Victory Baptist. The mere fact that identical or similar issues are raised by plaintiff is not sufficient to make plaintiff a privy to Victory Baptist. Therefore, the principles of *res judicata* and collateral estoppel do not present a bar to plaintiff's cause of action.

■ Defendants also urge this court to abstain from exercising jurisdiction in this case. Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). As the Supreme Court stated, *Id:*

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

It was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it. *Id.* at 813–814, 96 S.Ct. at 1244. The Supreme Court in *Colorado River Water Conservation District* listed three circumstances in which the doctrine of abstention would be appropriately invoked: 1) where a federal constitutional question might be mooted or presented in a different posture by a state court determination of state law; 2) when the case presents a difficult question of state law bearing on policy problems of substantial public import, and the exercise of federal jurisdiction would disrupt state efforts to establish a coherent policy with respect to those problems; and 3) where an injunction is sought to restrain the collection of taxes or criminal proceedings, and where no bad faith, harassment, or a patently invalid statute is involved.

None of these factors is present in this case. One state court has already addressed the issue now before this court, and has interpreted relevant state statutes. Extensive interpretation of the state regulatory provisions is not required here; rather, the question presented is primarily whether the state program violates plaintiff's rights under the United States Constitution. The court concludes that abstention is not required in this case.

Defendants' remaining argument addresses the merits of plaintiff's complaint. The court has converted defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) into a motion for summary judgment under Fed.R.Civ.P. 56.

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admis-

sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in a light favorable to the plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, —— – ——, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

The workers' compensation system is authorized by Article II, Section 35 of the Ohio Constitution. Section 35 authorizes the legislature to enact laws establishing a state fund maintained by compulsory employer contributions for the purpose of providing compensation to workers and their dependents for death, injury or occupational disease stemming from the workmen's employment.

Definitions of "employee" and "employer" are found in Section 4123.01, Ohio Revised Code. The definition of "employee" includes: "Every person in the service of any person, firm, or private corporation, including any public service corporation." On August 22, 1986, the statute was amended to exclude from the definition of employee "A duly ordained, commissioned, or licensed minister or assistant or associate minister of a church in the exercise of his ministry." Section 4123.01(A)(2)(a), Ohio Revised Code. Under Section 4123.-01(A)(2), it is now within the discretion of the employer whether to elect workers' compensation coverage for ministers or assistant ministers.

Section 4123.01(B), Ohio Revised Code, defines "employer" as:

Every person, firm, and private corporation, including any public service corporation, that (a) has in service one or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire,

. . .

Churches are included within the definition of "employer." *Victory Baptist Temple v. Industrial Commission of Ohio, supra.* The legislative intent to include churches and religious organizations within the definition of "employer" has been further clarified by the fact that while the legislature recently amended the definition of "employee" to exclude ministers, one particular type of church employee, it did not amend Section 4123.01(B) to exclude churches from the definition of "employer." Indeed, two bills recently introduced in the legislature in an effort to obtain an exemption for churches met with no success. The court concludes that plaintiff is an employer subject to the provisions of Chapter 4123, under which participation in the workers' compensation system is discretionary in regard to ministers or assistant ministers in the exercise of their ministries, but mandatory in regard to other employees.

Rates for premiums to be paid by employers are established by the Ohio Industrial Commission based upon the degree of hazard in each occupation and the total payroll for each class. Section 4123.19, Ohio Revised Code. Employers are required to maintain payroll records reflecting wage expenditures, and those records are subject to inspection by the Industrial Commission. Sections 4123.23 and 4123.24, Ohio Revised Code. An employer must also furnish an annual statement which includes the number of employees engaged in particular types of employment and the aggregate amount of wages paid. Section 4123.26, Ohio Revised Code. Under that section, failure to furnish such a statement renders the employer liable for a five hundred dollar forfeiture. In the event of a default in premium payments, the commission may make an assessment against the employer under Section 4123.37, Ohio Re-

**804**

vised Code. Failure to comply with an order or subpoena of the commission may result in the initiation of attachment proceedings. Section 4123.12, Ohio Revised Code. However, the affidavit of John R. Linzimmeir, Assistant Director of the Auditing/Underwriting Section of the Bureau of Workers' Compensation, indicates that legal action is initiated against a noncomplying employer only when informal attempts to encourage compliance have failed.

Every employee who is injured or who contracts an occupational illness, or who dies as a result of injury or occupational illness, is entitled to benefits unless the injury or illness was self-inflicted or caused by the employee's intoxication as the result of drug or alcohol use. Section 4123.54, Ohio Revised Code. Finally, under Section 4123.35, Ohio Revised Code, an employer, with the approval of the commission, may elect to become self-insured and pay benefits directly to its employees.

■ Plaintiff claims that the workers' compensation statutes constitute an unconstitutional burden on its free exercise of religion under the First Amendment of the United States Constitution. A challenge to a state regulation under the Free Exercise Clause necessitates a determination of whether the regulation infringes upon the free exercise of religion, and if so, whether the burden on free exercise is sufficiently justified by a compelling state interest. *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).

■ The mere fact that a religious practice is burdened by a governmental program does not mean that an exemption accommodating the practice must be granted. *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). Not all burdens on religion are unconstitutional, and the state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest. *United States v. Lee*, 455

U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982).

■ Plaintiff's complaint alleges that plaintiff possesses a sincerely-held religiously based objection to participating in and contributing to the workers' compensation system. Plaintiff alleges that the system presents a threat to its free exercise rights. Plaintiff submitted various affidavits, including an affidavit in support of its motion for a preliminary injunction filed August 17, 1983, in which its pastor, Dr. Roger P. Hogle, voiced plaintiff's objections. Dr. Hogle stated that the plaintiff church objects that the state, through the workers' compensation system, assumes lordship over the church in direct contravention to the Biblical principle that Jesus is "head over all things to the church" (Eph. 1:22) and "that in all things he might have preeminence." (Col. 1:18) The plaintiff believes that it would be a sin to contribute to workers' compensation out of church funds designated for Biblical purposes and that tithe and offering money does not belong to the people or the pastor but to God. (Matt. 22:21) Plaintiff further believes that it has a scriptural duty to assist its people with food, clothing, shelter or other essentials needed due to accident or illness. (Romans 12:13) Defendants do not contest in any way the sincerity or substance of plaintiff's religious beliefs.

The Supreme Court found in a similar situation dealing with the social security tax that the governmental regulations impinged upon the religious beliefs of members of the Amish sect. See *United States v. Lee, supra*. Plaintiff's complaint is sufficient to allege infringement of its religious beliefs. Therefore, it must be determined whether the workers' compensation system represents a compelling state interest sufficient to override plaintiff's interest in free exercise of its religion. Plaintiff concedes that the state is advancing a compelling state interest through its workers' compensation system, but contends that by failing to exempt churches from coverage, the state has not adopted the least restrictive means of furthering that interest.

Contributions to the workers' compensation fund are analogous to the mandatory social security payments upheld in *United States v. Lee, supra.* See also *Varga v. United States,* 467 F.Supp. 1113 (D.Md.1979); *Bethel Baptist Church v. United States,* 629 F.Supp. 1073 (M.D.Pa. 1986). The activities and practices of individuals, although religiously motivated, are often subject to state regulation under the state's power to promote health, safety and public welfare. *Windsor Park Baptist Church, Inc. v. Arkansas Activities Ass'n,* 658 F.2d 618 (8th Cir.1981). See e.g. *Gray v. Gulf, Mobile & Ohio Railroad Co.,* 429 F.2d 1064 (5th Cir.1970) (mandatory union dues); *Cook v. Spillman,* 806 F.2d 948 (9th Cir.1986) (income taxes); *E.E.O.C. v. Mississippi College,* 626 F.2d 477 (5th Cir. 1981) (application of Title VII employment discrimination regulations).

The documents submitted by the state reveal that plaintiff, as a religious organization, would fall within manual classification number 9062. The affidavit of John Linzinmeir reveals that as of November 19, 1987 there were 7,226 churches and religious organizations within classification number 9062, making up approximately 62% of the employers within that classification. Out of one hundred and ten Baptist churches which share religious beliefs similar to those held by plaintiff, only thirty-four are currently participating in the workers' compensation system. Defendants' evidence also reveals that during the period 1965 to 1987, employees of thirteen churches on the list of those objecting to participation in the system had filed a combined total of ninety-four claims for workers' compensations benefits, including one claim filed by an employee of plaintiff in 1977.

The affidavit of Paul C. Whitacre, Director of the Actuarial Department of the Bureau of Workers' Compensation, reveals that employers within classification 9062 paid $39,814,910.00 in premiums to the state insurance fund from 1982 to 1985. During that same period, the state incurred liability for compensation and benefits to injured workers of employers within classification 9062 in the amount of $59,099,-341.00. Liability thus exceeded the amount of premiums paid by $19,284,431.00. In Mr. Whitacre's opinion, part of this deficit is attributable to the lack of premium contributions by churches which have failed to pay the necessary premiums. Mr. Whitacre further stated that as of December 31, 1985, the state insurance fund had a deficit of approximately $1,115,000,000.00, of which two percent, or approximately $22,-300,000.00 was attributable to classification 9062 employers. Mr. Whitacre's opinion, within reasonable actuarial probability, was that this overall deficit could be attributed in part to churches which had failed to pay premiums. Mr. Whitacre stated that it was within reasonable actuarial probability that total exemption of churches from participation in the system would further deplete the assets of the fund, reduce the availability of funds to pay compensation to injured workers, worsen the deficit even further, and require an increase in premium rates for all employers. Mr. Whitacre further stated that the fund deficit would be reduced if noncomplying churches paid premiums according to law. Plaintiff has submitted no evidence to contradict the opinion of Mr. Whitacre or the figures upon which his opinion is based.

The court concludes that the state has a compelling interest in assuring the efficient administration and financial soundness of the workers' compensation fund, and that providing a total exemption for churches would place a further drain upon a system which is already experiencing a staggering deficit.

As noted in *Victory Baptist Temple, Inc. v. Industrial Commission of Ohio, supra,* 442 N.E.2d at 822:

In the instant case, the state has an "overriding governmental interest" in compensating workers and their dependents for death, occupational disease, and injury arising out of and occurring during the course of employment. To accomplish this purpose, the state has enacted comprehensive legislation creating a system which requires support by mandatory contributions by covered employers. Widespread voluntary coverage

would undermine the soundness of the program and be difficult, if not impossible, to administer with the myriad of exceptions flowing from a wide variety of religious beliefs.

Assuring the efficient administration of the system and the financial soundness of the fund constitutes a compelling state interest sufficient to outweigh plaintiff's free exercise rights. The mandatory contributions may require the use of church funds which would otherwise be used for religious activities, but do not constitute a direct burden on the exercise of plaintiff's religion.

The state has not only demonstrated a compelling interest in the financial soundness of the workers' compensation system, but also in protecting the interests of the injured worker. Plaintiff has stated that it believes in providing for the needs of its injured parishioners, and offers one example of paying the medical expenses of two parishioners who were injured in an automobile accident. The workers' compensation statutes simply provide for the manner in which this goal should be achieved.

Defendants offer evidence of one claim for accidental death benefits paid to a deceased minister's widow in the amount of $212,176.00. While the state system is large enough to handle accidents of catastrophic proportion in the workplace, such as a fire involving the injury or death of several workers, an individual employer, despite the best of intentions, may not have the financial resources to provide the necessary protection and benefits for employees and their dependents.

The state's regulatory scheme is reasonable and offers the least restrictive means available in that it permits a qualified employer who genuinely would be capable of caring for its own employees to opt for self-insurance under Section 4123.35. Plaintiff has offered no evidence to demonstrate that it would be capable of paying benefits to its injured workers. However, plaintiff is free to apply to become self-insured under Section 4123.35 if plaintiff does possess sufficient resources.

The legislature has exempted ministers and assistant ministers in the exercise of their ministries from mandatory coverage. This exception seeks to obviate excessive interference with the religious ministry of churches. The failure to extend the exception to all church employees expresses the legislative awareness that church clerical and maintenance personnel and teachers in church schools are potentially at risk in the workplace, and that the work of such employees, while perhaps furthering the religious beliefs of the church, also has secular aspects.

Plaintiff notes that other states have adopted provisions exempting ministers from coverage similar to the Ohio exemption, and that West Virginia has exempted churches from the definition of employer. However, the sole fact that a state system is not modeled after practices followed in other states does not mean that the state's system is unconstitutional. See e.g. *Martin v. Ohio*, — U.S. —, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). What constitutes the least restrictive means in one state may not be the least restrictive means in another. Furthermore, the Ohio workers' compensation system is distinguishable from other statutory schemes such as the Ohio unemployment compensation laws which exempt churches entirely from participation. The Ohio unemployment compensation system, for example, is funded from a variety of sources, whereas the workers' compensation system is funded solely by employer contribution. An exemption for churches from particpation in the Worker's Compensation System would thus have a more significant financial impact upon the insurance fund than such an exemption would have upon a system with a broader contribution base.

The court finds that the Ohio Workers' Compensation System as applied to plaintiff does not violate the Free Exercise Clause of the First Amendment and that no genuine issue of material fact has been shown in that regard. The state's interests in protecting the injured worker and the financial soundness of the insurance fund are sufficient to outweigh the resulting indirect burden on plaintiff's free exercise

rights, and the state has adopted the least restrictive means to further its interests.

◼ Plaintiff's complaint also challenges the workers' compensation system as constituting a violation of the Establishment Clause of the First Amendment. In *Lemon v. Kurtzman*, 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), the Supreme Court set forth the criteria which a statute or regulation must meet in order to survive challenge under the Establishment Clause: 1) the statute must have a secular legislative purpose; 2) the principal or primary effect must be one that neither advances nor inhibits religion; and 3) the statute must not foster an excessive government entanglement with religion.

The Ohio workers' compensation scheme meets the first test, in that it has a purely secular purpose, that being to provide compensation for injured or ill workers irrespective of their religious beliefs. Likewise, the principal or primary effect of the system is not to advance or inhibit religious beliefs.

◼ Plaintiff claims that the resulting government entanglement with religion is excessive, particularly in light of the recordkeeping and reporting obligations imposed by the statutes. However, the degree of entanglement is clearly revealed by the terms of the Ohio workers' compensation laws. Those statutes do not require a blanket inspection of all church documents and records. Under Section 4123.23, only records relating to payroll and wage expenditures are required to be open for inspection. Employers are required to report any job-related injury or illness under Section 4123.28 and the number of employees and aggregate wages under Section 4123.-26. All of these reporting requirements are essential to the operation of the workers' compensation system, which bases the amount of premiums on the degree of risk inherent in different job categories and the total payroll in each occupational class. Section 4123.29. Courts have found similar or greater reporting and inspection requirements to be constitutionally permissible. See e.g. *Tony and Susan Alamo Founda-*

*tion v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (minimum wage, overtime and recordkeeping requirements of the Fair Labor Standards Act upheld); *Bethel Baptist Church v. United States, supra* at 1087 (reporting and inspection requirements under social security laws upheld); *United States v. Coates*, 692 F.2d 629 (9th Cir.1982) (inspection of records by IRS upheld).

The record contains no indication that the Bureau of Workers' Compensation, in implimenting its duties, ever exceeds the scope of authority granted by the above statutes. Mr. Linzinmeir in his affidavit disavows any intent on the part of the Bureau to interfere with the religious activities of the church or to require disclosure of information concerning plaintiff's religious beliefs. The reporting requirements set forth in the statutes are minimal and strictly limited to the information needed to administer the workers' compensation system. The greater degree of intrusion cited by plaintiff resulting from the filing of legal action for noncompliance only occurs when the employer fails to pay premiums or to comply with the limited reporting requirements, and even then, legal action is taken only as a last resort when other informal means of resolving the dispute have failed.

The Court further notes that exempting churches from participation in the workers' compensation system would leave only common law remedies available to church employees who are injured in the workplace. Employees would have to pursue their claims through litigation in the state courts, an even more undesirable result from a scriptural standpoint. Plaintiff would encounter far more governmental involvement and entanglement through such employee litigation than it would through the activities of the Industrial Commission.

The degree of entanglement between religious organizations and the state as a result of the workers' compensation laws is minimal. This is true particularly in light of Section 4123.01(A)(2)(a), which exempts ministers and assistant ministers in the ex-

ercise of their ministries from the scope of the workers' compensation requirements. The workers' compensation system as applied to plaintiff does not violate the Establishment Clause, and the record reveals no genuine issue of fact in that regard.

 Plaintiff's complaint also challenges the workers' compensation laws under the Ohio Constitution. Article II, Section 35 of the Ohio Constitution, which authorizes the legislature to establish a workers' compensation system, contains no exemptions for religious organizations. The provision in the Ohio Constitution which is comparable to the religion clauses of the First Amendment is Article I, § 7. The Ohio Supreme Court has noted that the decisions of the United States Supreme Court can be utilized to give meaning to the guarantees found in Article I of the Ohio Constitution. *State ex rel. Heller v. Miller,* 61 Ohio St.2d 6, 399 N.E.2d 66 (1980). The Ohio courts have given no indication that they would apply Article I of the Ohio Constitution more stringently than the United States Supreme Court has applied the First Amendment. See e.g. *Welch Avenue Freewill Baptist Church v. Kinney,* 10 Ohio App.3d 196, 461 N.E.2d 19 (1983); *Rand v. Rand,* 18 Ohio St.3d 356, 481 N.E.2d 609 (1985). In *Victory Baptist Temple, Inc. v. Industrial Commission of Ohio, supra,* an Ohio court of appeals upheld the constitutionality of the workers' compensation system under the First Amendment. Plaintiff has not stated a claim for relief under the Ohio Constitution.

The court finds that the pleadings and affidavits filed in the case "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). Even accepting plaintiff's affidavits and evidence as true, as this court must in considering whether to grant summary judgment, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the unrefuted facts demonstrate that plaintiff is not entitled to the declaratory and injunctive relief requested. *Celotex v. Catrett,* 477 U.S. 317, —— ——,

106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

Defendants are GRANTED summary judgment.

Plaintiff is the only named plaintiff in the present case. Since the court has dismissed plaintiff's claims, there is no longer a party to serve as an adequate representative in a class action. Plaintiff's motion to certify this case as a class action and defendants' motion to strike the class allegations in the complaint are therefore moot and are DENIED.

The case is dismissed.

It is so ORDERED.