765 So.2d 757 (2000)
TEMPORARY LABOR SOURCE, et al., Appellants/Cross-Appellees,
v.
E.H., Appellee/Cross-Appellant.
No. 1D98-2168.
District Court of Appeal of Florida, First District.
June 8, 2000.
Rehearing Denied July 11, 2000.
*758 Kimberly A. Hill of Conroy, Simberg & Ganon, P.A., Hollywood, for Appellants/Cross-Appellees.
David C. Wiitala of Wiitala & Contole, P.A., North Palm Beach, for Appellee/Cross-Appellant.
BARFIELD, C.J.
This is an appeal and cross-appeal from an order awarding compensation benefits to a claimant whose leg was amputated as the result of injuries he suffered when he fell off a garbage truck. We find reversible errors and remand the case to the judge of compensation claims (JCC) for further proceedings.
The evidence presented to the JCC demonstrated that just before he fell, the claimant was riding on the outside of the garbage truck, in violation of the employer's safety policies, and that when his urine was routinely collected by emergency room staff and tested by the hospital, the presence of cocaine was indicated. Upon further testing by an independent laboratory three months later, the presence of cocaine and its metabolites in the claimant's urine sample was confirmed and quantified. The employer and carrier (E/C) presented these drug test results as evidence that the accident was caused primarily by the influence of drugs, as provided by section 440.09(3), Florida Statutes,[1] and to raise the presumption set out in section 440.09(7)(b), Florida Statutes.[2]
The JCC construed section 440.09(3) in pari materia with section 440.09(7) and ruled that, while a drug test of a sample which was taken for medical purposes may be used to support an intoxication defense under section 440.09(3), the presumption in section 440.09(7)(b), which is based upon a positive confirmation drug test, may not be based upon a drug test of a medically-drawn sample unless the Florida Administrative Code requirements alluded to under section 440.09(7)(d) are followed.[3] The JCC's final order did not recite his ruling on the applicability of the intoxification presumption, but instead denied the claim in its entirety on the ground that the claimant had violated section 440.105, Florida Statutes, and was therefore barred by section 440.09(4) from entitlement to compensation. On appeal, this court reversed the order, finding that a JCC is not authorized under section 440.09(4) to make a *759 section 440.105 determination, and the case was remanded for further proceedings.[4]
On remand, the JCC denied a motion for reconsideration of his prior ruling on applicability of the intoxication presumption, relying upon the "law of the case" doctrine, and also reaffirmed his prior ruling on the applicability of the presumption, irrespective of "law of the case." The JCC's final order ruled that the accident and injuries were compensable, finding that the presumption of section 440.09(7)(b) does not apply to the facts of this case, that the claimant ingested cocaine within hours of the accident, but the accident was caused primarily by "fatigue brought on by seven hours of work, or simple inadvertence," and that the E/C failed to prove, by the greater weight of the evidence, that "the accident was occasioned primarily by Claimant's intoxication or the influence of a drug or alcohol on Claimant." The JCC found that the evidence would not have overcome the section 440.09(7)(b) presumption if it had been applicable, and rejected the claimant's contention that the employer had actual knowledge of his condition and expressly acquiesced in his presence in the workplace, which would have made the presumption inapplicable, but noted that these findings were not necessary to his decision on compensability.
The JCC accepted testimony of medical facility representatives that the carrier had given them express authorization to treat the claimant, found that good cause had been shown to excuse any late filing of medical bills, and ordered the E/C to pay the medical bills, noting that this ruling "stands separate and apart from my finding of compensability." He dismissed without prejudice the claim for permanent total disability (PTD) benefits, finding that a determination of PTD "is not ripe yet" because, based on the evidence presented at the December 1995 hearing, the claimant had not yet reached MMI, relying upon medical expert testimony "that the use of a prosthetic device may increase Claimant's ability and capacity for work." He found that because the claimant had not reached MMI, "his injury does not yet qualify as a permanent impairment of a catastrophic nature," and rejected without discussion the claimant's contention that he was entitled to PTD benefits from the date of the accident.
We reverse the JCC's finding that the "law of the case" precluded reconsideration of his prior ruling that the intoxication presumption did not apply in this case, but because the JCC reaffirmed on the record that even if law of the case did not preclude reconsideration, he would not alter his ruling on the intoxication presumption, the issue need not be reconsidered on remand. We affirm the JCC's ruling that, while a drug test performed for medical purposes may be admissible to support an intoxication defense under section 440.09(3), the presumption set out in section 440.09(7)(b) does not arise as the result of a positive confirmation drug test using a medically-drawn sample unless the Florida Administrative Code rules required by section 440.09(7)(d) are followed. Because this record demonstrates a lack of compliance with those rules, we affirm the JCC's ruling that the E/C are not entitled to a presumption that the injury was occasioned primarily by the influence of a drug upon the claimant. While the evidence supports a finding that the claimant was under the influence of a drug at the time of the accident, competent substantial evidence supports the JCC's finding that the influence of drugs was not the primary cause of the accident.
We conclude that the JCC erred in finding that the claimant had not reached maximum medical improvement (MMI) at the time of the December 1995 hearing *760 and in ruling that the PTD issue was not ripe for adjudication. Contrary to the JCC's finding, the claimant's leg amputation constituted a catastrophic injury as defined in section 440.02(34)(b).[5] While the record contains expert testimony "that the use of a prosthetic device may increase Claimant's ability and capacity for work," a prosthesis will not change the fact that the claimant suffered a catastrophic injury. Under section 440.15(1)(b), a claimant with a catastrophic injury, in the absence of conclusive proof of a substantial earning capacity, is presumed to be PTD from the date of the accident.[6] No conclusive proof of the claimant's substantial earning capacity has been presented to the JCC, and he is presumed to be PTD until such proof is presented. We note that section 440.15(1)(e) authorizes the E/C to conduct rehabilitation evaluations even after the claimant has been accepted or adjudicated as entitled to PTD compensation.
We decline the E/C's suggestion that we modify our prior decision in this case regarding the JCC's lack of authorization to make a section 440.105 determination. The other issues raised in the appeal and cross-appeal are either mooted by our rulings on the issues discussed in this opinion, or are without merit.
The final order is AFFIRMED in part and REVERSED in part. The case is REMANDED to the JCC for correction of the order consistent with this opinion, and for determination of the claimant's entitlement to PTD benefits under the "catastrophic injury" provisions of section 440.15, Florida Statutes.
WEBSTER and BENTON, JJ., CONCUR.
NOTES
[1] Section 440.09(3) provides:

Compensation is not payable if the injury was occasioned primarily by the intoxication of the employee; by the influence of any drugs, barbiturates, or other stimulants not prescribed by a physician; or by the willful intention of the employee to injure or kill himself, herself, or another.
[2] Section 440.09(7)(b) provides:

If the employee has, at the time of the injury, a blood alcohol level equal to or greater than the level specified in s. 316.193, or if the employee has a positive confirmation of a drug as defined in this act, it is presumed that the injury was occasioned primarily by the intoxification of, or by the influence of the drug upon, the employee.
[3] Section 440.09(7)(d) provides:

The division shall provide by rule for the authorization and regulation of drug testing policies, procedures, and methods. Testing of injured employees shall not commence until such rules are adopted.
Chapter 38F-9, Florida Administrative Code ("Drug Testing Rule"), was created in 1991 to implement the mandate of section 440.09(7)(d), and remained unchanged at the time of the 1994 accident. Rules 389.006(7), 38F-9.007, and 38F-9.014(2) required compliance with chapter 10E-18, Florida Administrative Code. In 1996, all the sections in chapter 38F-9 were repealed, and section 38F-9.015 ("Drug Testing Criteria") was created, which provides:
Chapter 59A-24, Florida Administrative Code, Drug-free Workplace Standards, as adopted by the Agency for Health Care Administration, is hereby incorporated herein by reference, and shall be utilized for all drug testing pursuant to Chapter 440, Florida Statutes.
[4] See E.H. v. Temporary Labor Source, Inc., 687 So.2d 884 (Fla. 1st DCA), rev. den., Temporary Labor Source, Inc. v. E.H., 701 So.2d 868 (Fla.1997).
[5] Section 440.02(34)(b) defines "catastrophic injury" as "a permanent impairment constituted by ... [a]mputation of an arm, a hand, a foot, or a leg involving the effective loss of use of that appendage." The JCC's finding, in an attempt to make sense of this cryptic definition, that "effective loss of use" can be "minimized or restored" with "an appropriate prosthetic device," is not the most rational interpretation of this statutory definition. As conceded by the E/C at oral argument, a better explanation, in light of recent medical developments, is that the legislature intended to head off ill-founded claims arising from amputation accidents in which the severed hand or foot is successfully reattached and the injured worker regains the effective use of it, without precluding a claim from a similarly injured worker whose appendage is reattached, but is of no effective use to the worker.
[6] See Jackson v. Princeton Farms Corp., 140 So.2d 570 (Fla.1962), as applied in Lundy Stables v. Rivers, 562 So.2d 784 (Fla. 1st DCA 1990).