PER CURIAM.
The emplóyer/carrier (E/C) appeals an order of the judge of compensation claims (JCC) finding that Thomas Robinson sustained a compensable work-related injury. In affirming the JCC’s finding that the work-related injury arose out of and in the course and scope of Mr. Robinson’s employment, we also approve her ruling that the E/C was not entitled to a presumption that Mr. Robinson’s “injury was occasioned primarily by [his] intoxication,” § 440.09(7)(b), Fla. Stat. (2002), and uphold her decision that the E/C “has not shown by the greater weight of the evidence that claimant’s injury was caused primarily by the use of ... alcohol.”
On November 13, 2002, Mr. Robinson sustained life-threatening injuries to the left side of his head while working at European Marble Company. At the time of his accident, Mr. Robinson was in the in *504 ventory yard emptying crates that were partially filled with marble tile. The crates were stacked on top of each other, up to three crates high, and Mr. Robinson was standing inside the highest crate. To gain access to the top level of crates, which was between nine and twelve feet high, Mr. Robinson either climbed the crates or used a forklift. The crates sat on cement or dirt packed with a layer of shell stone, or on concrete.
Mr. Robinson has no memory of the day he was injured, and while no one at his place of employment witnessed the accident, several European Marble employees testified about events occurring before and after the accident. Michael Bliss, Mr. Robinson’s supervisor, explained that just before the accident Mr. Robinson was standing in a wooden crate that was stacked on top of two other wooden crates. About fifteen minutes after seeing Mr. Robinson working in the crate, Mr. Bliss returned to Mr. Robinson’s area and saw him “sitting up [on the concrete] holding his back” and noticed that the crate Mr. Robinson had been working in had fallen. According to Mr. Bliss, Mr. Robinson said that he did not know what happened or how the crate fell, but that he did not fall out of the crate. Mr. Robinson complained of a back spasm and a headache. Joseph Lubrano, the president of European Marble, noted that after the accident Mr. Robinson appeared to be responding lucidly when he explained that he had injured his back. Mr. Bliss explained that Mr. Robinson stood up and appeared to be “trying to get his bearings,” but had to sit back down. Mr. Bliss left the area to help another employee and when he returned Mr. Robinson was having a seizure.
At the emergency room, Mr. Robinson was unable to provide information about his injuries because he was “intubated and pharmacologically paralyzed.” After a CT scan, Dr. Ryan S. Glasser, a board-certified neurosurgeon, “performed emergent craniotomy and evacuation of an epidural hematoma and repair of a skull fracture.” In Dr. Glasser’s opinion, Mr. Robinson’s injury was acute and traumatic and consistent with either a blow to the head or a fall from nine to twelve feet onto a concrete surface. Dr. Glasser explained that in light of the sequence of Mr. Robinson’s symptoms — a lucid interval, followed by a seizure — it is unlikely that Mr. Robinson had a seizure in the crate and then fell. He felt that the most logical sequence of events was that Mr. Robinson “had a fall from 10 to 12 feet, ha[d] a blow to his head, recovered] and [wa]s stunned a little bit and then as the hematoma enlarge[d] ha[d] a seizure and bec[a]me[] unconscious.” According to Dr. Glasser, the emergency room record indicated that Mr. Robinson’s blood-alcohol level was 0.053 percent at about 2:50 p.m. The E/C presented evidence through the testimony of Paul L. Doering, a registered pharmacist and pharmacy professor, that Mr. Robinson’s blood-alcohol level must have exceeded .08 percent at the time he was injured.
The medical technologist explained that because Mr. Robinson's blood was drawn for medical (as opposed to legal) purposes his blood sample was not “put in a sealed bag that [is] initialed by the patient, and ... signed every time [it] change[d] hands, ... [or kept] under lock and key when it’s not being processed.” She was uncertain whether Mr. Robinson’s blood was drawn at 2:50 p.m. or whether the test was run at that time and she did not know which testing methodology was used. She also did not know whether the hospital laboratory was licensed and approved by the Agency for Healthcare Administration (AHCA).
The E/C denied compensability and defended on the ground that Mr. Robinson’s *505 injury was occasioned primarily by the influence of alcohol. See § 440.09(3), Fla. Stat. (2002) (“Compensation is not payable if the injury was occasioned primarily by the intoxication of the employee; by the influence of any drugs, barbiturates, or other stimulants not prescribed by a physician”). The judge of compensation claims relied on Temporary Labor Source v. E.H., 765 So.2d 757 (Fla. 1st DCA 2000), to determine that the E/C was “not entitled to a presumption that the injury was occasioned primarily by the influence of a drug or alcohol.” We affirm that conclusion because “this record demonstrates a lack of compliance with” the procedures for testing and maintaining blood alcohol samples set forth in the Florida Administrative Code. Id. at 759; see Fla. Admin. Code ch. 59A-24.
Under section 440.09(7)(b), Florida Statutes (2002), a “presum[ption] that the injury was occasioned primarily by the intoxication of, or by the influence of the drug upon, the employee” arises “[i]f the employee has, at the time of the injury, a blood alcohol level equal to or greater than [0.08 grams of alcohol per 100 milliliters of blood], or if the employee has a positive confirmation of a drug as defined in this act.” In Temporary Labor Source, we affirmed a ruling of the judge of compensation claims that the E/C were not entitled to the presumption that claimant’s injury was occasioned primarily by the influence of cocaine upon the claimant. See 765 So.2d at 759. In affirming, we agreed with the “JCC’s ruling that, while a drug test performed for medical purposes may be admissible to support an intoxication defense under section 440.09(3), the presumption set out in section 440.09(7)(b) does not arise as the result of a positive confirmation drug test using a medically-drawn sample unless the Florida Administrative Code rules required by section 440.09(7)(d) are followed.” Id. Section 440.09(7)(d), Florida Statutes (2002) requires AHCA to “provide by rule for the authorization and regulation of drug-testing policies, procedures, and methods.”
On appeal, the E/C argue that compliance with the Florida Administrative Code rules mentioned in Temporary Labor Source is not required where, as here, the E/C are attempting to prove that the injury was occasioned primarily by claimant’s alcohol intoxication, rather than by the influence of another drug, as in Temporary Labor Source. Thus, according to the E/C, “[a]lcohol intoxication, while in the same statute, does not have the same exact requirements.... [If] Claimant’s blood-alcohol level [at the time of the accident] was at least a .08[] then the statutory presumption exists.”
We disagree with the E/C’s contention and hold that the Florida Administrative Code rules required by section 440.09(7)(d) also apply to blood-alcohol tests.- In Temporary Labor Source, we explained the history of AHCA’s implementation of the mandate in section 440.09(7)(d):
Chapter 38F-9, Florida Administrative Code (“Drug Testing Rule”), was created in 1991 to implement the mandate of section 440.09(7)(d).... In 1996, all the sections in chapter 38F-9 were repealed, and section 38F-9.015 (“Drug Testing-Criteria”) was created, which provides:
Chapter 59A-24, Florida Administrative Code, Drug-free Workplace Standards, as adopted by the Agency for Health Care Administration, is hereby incorporated herein by reference, and shall be utilized for all drug testing pursuant to Chapter 440, Florida Statutes.
765 So.2d at 758, n. 3. Section 38F-9.015 was later transferred to section 69L-9.015, but that section still provided that chapter *506 59A-24 “shall be utilized for all drug testing pursuant to Chapter 440, F.S.” Fla. Admin. Code Ann. R. 69L-9.015 (emphasis supplied). Chapter 59A-24 of the Florida Administrative Code treats alcohol as a drug.[1]
Since chapter 440 of the Florida Statutes and chapter 59A-24 of the Florida Administrative Code treat alcohol as a drug, we conclude that chapter 59A-24 of the Florida Administrative Code applies to the blood-alcohol tests discussed in section 440.09(7)(b), which provides: “If the employee has, at the time of the injury, a blood alcohol level equal to or greater than [0.08 grams of alcohol per 100 milliliters of blood], or if the employee has a positive confirmation of a drug as defined in this act, it is presumed that the injury was occasioned primarily by the intoxication of, or by the influence of the drug upon, the employee.” § 440.09(7)(b), Fla. Stat. (2002) (emphasis supplied). “Drug” is defined in section 440.102(l)(c), Florida Statutes (2002), as, among other things, “alcohol, including a distilled spirit, wine, a malt beverage, or an intoxicating liquor.” § 440.102(l)(c), Fla. Stat. (2002).[2] See Vocelle v. Knight Bros. Paper Co., 118 So.2d 664, 667 (Fla. 1st DCA 1960) (“When a statute contains a definition of a word or phrase that meaning must be ascribed to the word or phrase whenever repeated in the same statute unless a contrary intent clearly appears.... Applying these simple rules the legislative intent in enacting Chapter 59-55 is clear and unambiguous. The definition of ‘average weekly wages’ contained in the amendment to Section 443.04 is controlling in determining the meaning of that phrase as used in the amendment to Section 443.05.”); Davis v. Swatts, 556 So.2d 467, 471 (Fla. 1st DCA 1990) (“[A] definition in a statute must not be repugnant with other parts of the act.”). “An agency’s interpretation of the statute that it is charged with enforcing is entitled to great deference.” Level § Communications, LLC v. Jacobs, 841 So.2d 447, 450 (Fla.2003). Therefore, we conclude that chapter 59A-24 of the Florida Administrative Code applies to blood-alcohol tests, and “[b]eeause this record [through the medical technologist’s testimony] demonstrates a lack of compliance with those rules, we affirm the JCC’s ruling that the E/C are not entitled to a presumption that the injury was occasioned primarily by the influence of a drug upon the claimant.” Temp. Labor Source, 765 So.2d at 759.
We decline to disturb the finding of the judge of compensation claims that the E/C failed to meet their burden of establishing “by the greater weight of the evidence that claimant’s injury was caused primarily by the use of drugs or alcohol.” See Wright v. DSK Group, 821 So.2d 455, 456 (Fla. 1st DCA 2002) (holding that where “employer *507 was not entitled to the ... presumption authorized by section 440.09(7)(b) .... it was obliged to establish, by the greater weight of the evidence, that the work-related injury ‘was occasioned primarily by the intoxication of the employee’”) (citations omitted). Thus, “[e]ven though we might have reached a different result if the facts had been for us to find,” Olavarria v. Okeelanta Corp., 741 So.2d 1249, 1250 (Fla. 1st DCA 1999); see also Fla. Mining & Materials v. Mobley, 649 So.2d 934, 934 (Fla. 1st DCA 1995) (“[A] ruling which is supported by competent substantial evidence will be upheld even though there may be some persuasive evidence to the contrary.”), we are compelled to affirm the award of compensation benefits because there is competent substantial evidence to support the finding that “[ujnder these circumstances, it is just as likely that claimant fell from the crates because he was not using any safety devices or ladder.”
Accordingly, we affirm the conclusion of the judge of compensation claims that Mr. Robinson’s work-related injury arose out of and in the course and scope of his employment.-
AFFIRMED.
BENTON, PADOVANO, and HAWKES, JJ., concur.

. For example, Rule 59A-24.003 provides that "[i]n addition to the definitions set forth in section 112.0455(5), F.S., as used in this rule chapter the following terms shall mean....” Fla. Admin.Code Ann. R. 59A-24.003. Section 112.0455(5)(a), Florida Statutes (2002), states in part that: " 'Drug' means alcohol, including distilled spirits, wine, malt beverages, and intoxicating liquors....” Further, Rule 59A-24.004(2)(b) and Rule 59A-24.006(4)(e), (f) provide specific instructions applicable only to tests for alcohol.

. Section 440.102(l)(c) is appropriately looked to even if "this act” refers to chapter 90-201, Laws of Florida, and not to chapter 440 of the Florida Statutes, because chapter 90-201 added the following language to section 440.09: "[0]r if the employee has a positive confirmation of a drug as defined in this act.” Ch. 90-201, § 11, at 910, Laws of Fla. Chapter 90-201 also created section 440.102, Florida Statutes, and defined "drug,” as, among other things "alcohol, including distilled spirits, wine, malt beverages, and intoxicating liquors.” Ch. 90-201, § 13, at 912, Laws of Fla.