945 So.2d 526 (2006)
Jan MALICHI, Appellant,
v.
ARCHDIOCESE OF MIAMI and Unisource Administrators, Inc., Appellees.
No. 1D05-5108.
District Court of Appeal of Florida, First District.
November 8, 2006.
Rehearing Denied January 8, 2007.
*528 Geoffrey B. Marks and G. Bart Billbrough of Billbrough & Marks, P.A., Coral Gables, for Appellant.
Warren Brown, Bernard I. Probst, Leticia G. Coleman and Robert L. Teitler of Walton Lantaff Schroeder & Carson, LLP, Fort Lauderdale, for Appellees.
THOMAS, J.
The issue before this court is one of first impression: whether the Free Exercise Clause of the First Amendment to the United States Constitution precludes judicial review of a Catholic priest's workers' compensation claim.
Appellant, a Catholic priest, appeals the Judge of Compensation Claims' (JCC) summary final order dismissing his workers' compensation claim filed against Appellee, the Archdiocese of Miami, because the JCC lacked subject-matter jurisdiction under the First Amendment to the United States Constitution to consider Appellant's claim. We now affirm.
We hold that civil courts lack subject-matter jurisdiction, as a matter of law, to consider Appellant's claim because it constitutes an internal employment dispute between a priest and his church. The church autonomy doctrine, also known as the ecclesiastical abstention doctrine, protects the Archdiocese from state interference in its internal employment disputes. To allow Appellant to litigate his claim as a purported "employee" would violate the Free Exercise Clause of the First Amendment to the United States Constitution by entangling the civil courts in the Catholic Church's internal governance.

Facts and Procedural History
Appellant filed a petition seeking workers' compensation benefits. He asserted that while serving as an associate pastor with the Archdiocese, he suffered an injury lifting a television and assisting another priest. The Archdiocese ultimately filed a motion for summary final order seeking dismissal based solely on lack of subject-matter jurisdiction. The Archdiocese asserted that the First Amendment precluded Appellant's workers' compensation claim and filed a monsignor's affidavit stating that Appellant was an incardinated cleric under canon law and thus was not an employee of the Archdiocese.[1]
The Archdiocese further explained that because Appellant's employment relationship is governed by canonical law, his workers' compensation claim necessarily raises issues of ecclesiastical law, faith, religious doctrine and internal church organization. According to the Archdiocese, applying the workers' compensation law to Appellant would preclude his ability to maintain confidences, thus violating church law. Therefore, the Archdiocese argued, *529 the church autonomy doctrine bars Appellant's claim.
Appellant argued that the question of whether he is an employee for purposes of workers' compensation benefits does not require delving into matters of intrachurch governance, discipline or dogma, and therefore, the church autonomy doctrine does not bar his claim. The JCC accepted the Archdiocese's position and dismissed Appellant's claim.

Analysis
The church autonomy doctrine is based on the Free Exercise Clause of the First Amendment. The doctrine prevents secular courts from reviewing disputes requiring an analysis of "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required," and under the doctrine, secular courts must accept the decision by the highest ecclesiastical authority on such matters. Watson v. Jones, 80 U.S. (13 Wall.) 679, 733, 20 L.Ed. 666 (1871) (emphasis added). When analyzing jurisdiction under the church autonomy doctrine, courts must consider the nature and substance of the claim to determine if the claim involves a prohibited inquiry. Patton v. Jones, ___ S.W.3d ___, ___, 2006 WL 2082974 at *3 (Tex.App. July 28, 2006) (citations omitted).
According to the monsignor's affidavit, the determination of whether a priest is classified as an employee for workers' compensation purposes is made based on internal church organization. Therefore, the Archdiocese asserts that a civil court does not have jurisdiction to review the Church's classification of Appellant as an incardinated cleric, rather than an employee, because this relationship is an essential part of church government.
Once the Archdiocese asserts that the Appellant is an incardinated cleric and not an employee, we must respect the relationship between the Church and its priest because "[t]he relationship between an organized church and its ministers is its lifeblood. . . . Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern." McClure v. Salvation Army, 460 F.2d 553, 558-59 (5th Cir.1972) (holding that the "ministerial exception" doctrine precludes judicial review of a minister's Title VII claim). Although we respect this relationship, we reject the Archdiocese's argument that our analysis ends the moment it asserts that a dispute falls outside civil court review. A church or religious organization seeking to avoid application of a neutral state law must first show why application of the law requires adjudication of an ecclesiastical matter. See Malicki v. Doe, 814 So.2d 347, 354 (Fla.2002) (explaining that "before the constitutional right to free exercise of religion is implicated, the threshold inquiry is whether the conduct sought to be regulated was `rooted in religious belief'" and that "in order to launch a free exercise challenge, it is necessary `to show the coercive effect of the enactment as it operates against [the individual] in the practice of his religion.'") (internal citations omitted).
The subject of a priest's employment relationship with his church is not per se barred by the church autonomy doctrine. For example, the nature of a priest's employment relationship with his church may be explored when a third party seeks damages from a church based on the priest's alleged tortious actions. See Id. at 364. Therefore, the Archdiocese must first show why consideration of Appellant's workers' compensation claim requires adjudication of an ecclesiastical matter.
*530 Because the Archdiocese maintains an absolute ecclesiastical right to control and direct Appellant's duties and functions, any inquiry into this subject required the JCC to inquire into internal matters of church governance. This is constitutionally impermissible. See Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church, 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952), (stating that the supreme court's decision in Watson allows churches the "power to decide for themselves, free from state interference, matters of church government as well as faith and doctrine.") (emphasis added). In Southeastern Conference Association of Seventh-Day Adventists, Inc. v. Dennis, 862 So.2d 842 (Fla. 4th DCA 2003), the Fourth District correctly explained that "[c]ourts may not consider employment disputes between a religious organization and its clergy because such matters necessarily involve questions of internal church discipline, faith, and organization that are governed by ecclesiastical rule, custom and law." Id. at 844 (citations omitted). Therefore, the Fourth District held that the circuit court did not have jurisdiction over a minister's negligence claim filed against his church for its response to a parishioner's allegations against the minister. We think the same rationale and analysis apply here. Thus, the church autonomy doctrine similarly precludes this court from considering Appellant's claim.
As the Fourth District explained in Dennis, civil courts are bound to accept the Archdiocese's absolute ecclesiastical authority under the church autonomy doctrine. Id.; see also Serbian E. Orthodox Diocese for the U.S. & Can. v. Milivojevich, 426 U.S. 696, 709, 96 S.Ct. 2372, 2380, 49 L.Ed.2d 151, 162 (1976) (stating that where resolution of ecclesiastical disputes cannot be made without extensive inquiry by civil courts into religious law and polity, "the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them."); Dennis, 862 So.2d at 844. Because this court must accept the Archdiocese's authority, Appellant must accept its authority as well and cannot seek review of his claim in this court. As the United States Supreme Court has explained,
The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.
Watson, 80 U.S. at 728-29 (emphasis supplied).
A controverted workers' compensation claim places an employer, and its retained carrier, in an adversarial legal relationship with an employee. See, e.g., Brown v. Justin C. Johnson & Assoc., P.A., 937 So.2d 780 (Fla. 1st DCA 2006) *531 (determining whether the claimant's activity was within the "course and scope of his employment"); Chapman v. Nationsbank, 937 So.2d 788 (Fla. 1st DCA 2006) (considering whether the claimant knowingly made a false statement to obtain benefits); Dollar Gen. Corp. v. MacDonald, 928 So.2d 464, 466 (Fla. 1st DCA 2006) (holding that the claimant's work activity was not the "major contributing cause" of the injury); European Marble Co. v. Robinson, 885 So.2d 502, 503 (Fla. 1st DCA 2004) (defending claim on the ground that the claimant was intoxicated or under the influence of drugs which caused the injury). All of these examples of workers' compensation claims would place the Archdiocese and its priest in an adversarial legal relationship. Therefore, judicial consideration of Appellant's claim violates the Archdiocese's Free Exercise rights under the First Amendment.
Although chapter 440 was enacted, in part, to minimize this adversarial relationship by providing a quick and efficient recovery to injured workers, adversarial litigation occurs quite regularly. Resolving an adversarial workers' compensation dispute would invariably interfere in the critical and constitutionally protected relationship between a church and its minister. This explains why a state might choose to exempt ministers from the definition of "employee" for purposes of workers' compensation laws. In South Ridge Baptist Church v. Industrial Commission of Ohio, 676 F.Supp. 799 (S.D.Ohio 1987), the court noted that the exemption provided in Ohio law "seeks to obviate excessive interference with the religious ministry of churches." Id. at 806.
Although Florida law provides no such exemption, application of chapter 440 to priests' claims would excessively interfere with the Archdiocese's ministry because the Archdiocese would necessarily have to defend itself regarding these claims. This would require civil courts to determine the good faith or credibility of the Archdiocese, or its priests, which we find is barred by the church autonomy doctrine. While Appellant correctly asserts that Florida law does not specifically exempt clergy from its workers' compensation statutes, this argument would only be significant absent the requirements of the First Amendment because the statute must yield to the United States Constitution. See Bollard v. Ca. Province of the Soc'y of Jesus, 196 F.3d 940, 945 (9th Cir.1999) (determining that the source of the ministerial exception, a subpart of the church autonomy doctrine, is "the Constitution rather than the statute."). Thus, the church autonomy doctrine precludes application of chapter 440 to Appellant regardless of whether a ministerial exemption exists in Florida law.
An inquiry about whether a priest was properly engaged in his assigned duties and injured as a result of his employment could inevitably lead to disputes regarding whether the church exercised its ecclesiastical authority in assigning those duties. Determination of a priest's duties is a matter of the church's internal administration and government. See McClure, 460 F.2d at 559. As the Archdiocese argues, similar questions could affect the special relationship between a priest and his church or the ability of a priest to receive and maintain church confidences.
Another impermissible infringement upon a priest's employment relationship and the church's internal governance could arise pursuant to section 440.205, Florida Statutes (2006), which protects an employee from a retaliatory discharge in response to the employee's filing of a valid workers' compensation claim. Claims brought under anti-retaliation statutes may be barred by the Free Exercise Clause. See Starkman *532 v. Evans, 198 F.3d 173, 175 (5th Cir.1999) (explaining that a claim brought under a Louisiana retaliatory discharge statute was barred by the Free Exercise Clause). Because resolving any of these issues in the judicial branch would necessarily infringe on the Archdiocese's constitutional right of free exercise, this court cannot consider Appellant's workers' compensation claim.
Although we find that this court lacks jurisdiction to consider Appellant's claim, we acknowledge our supreme court's holdings that permit third parties to file negligent-hiring and negligent-supervision claims against hierarchical churches. See Doe v. Evans, 814 So.2d 370, 376 (Fla. 2002); Malicki, 814 So.2d at 347 (holding that due to the neutral principles inherent in tort law, such claims do not implicate the Free Exercise Clause). We find Appellant's claim distinguishable from both Evans and Malicki because Appellant's claim would excessively entangle civil courts in the resolution of a completely internal church matter involving no third parties.

Conclusion
We hold that a priest's workers' compensation claim is barred by the church autonomy doctrine of the First Amendment. The JCC, therefore, correctly dismissed Appellant's workers' compensation claim for lack of subject matter jurisdiction.
We do not decide whether the church autonomy doctrine applies to a claim filed by a minister of a "congregational" or "presbyterial" church (or other religious body) that does not have the same hierarchical structure and well-established body of canonical law as the Archdiocese. Other courts have stated there is no difference in the application of the doctrine to all three church categories, but we express no opinion on the reasoning or on the result reached by those courts. See Crowder v. S. Baptist Convention, 828 F.2d 718, 727 n. 20 (11th Cir.1987); Calvary Christian Sch., Inc. v. Huffstuttler, 2006 WL 1779525 n. 2, 367 Ark. 117, ___ n. 2, ___ S.W.3d ___ (Ark. June 29, 2006); Guinn v. Church of Christ of Collinsville, 775 P.2d 766, 772 n. 18 (Okla.1989); Patterson v. S.W. Baptist Theological Seminary, 858 S.W.2d 602, 606 (Tex.App.1993).
AFFIRMED.
KAHN and LEWIS, JJ., concur.
NOTES
[1] The monsignor further averred that Appellant continued to receive his monthly stipend, that all of Appellant's associated medical bills to date had been paid, and that the Archdiocese had requested Appellant to submit any medical bills needing to be paid so that the Archdiocese could pay those bills.